## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2902 | DATE | 11/14/2002 |
| CASE TITLE | Anzaldua vs. Chicago Transit Authority | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant defendant's motion (Doc 12-1) to dismiss. Status hearing set for January 28, 2003 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | NOV 15 2002 date docketed |
| | Notified counsel by telephone. | |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| SCT | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

02 NOV 14 PM 12:23
U.S. DISTRICT COURT
CLERK

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BEATRIZ A. ANZALDUA, )
 )
        Plaintiff, )
 )
vs. ) 02 C 2902
 )
CHICAGO TRANSIT AUTHORITY, an Illinois )
municipal corporation, )
 )
        Defendant. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter is before the court on Defendant Chicago Transit Authority's ("CTA") motion to dismiss Plaintiff Beatriz A. Anzaldua's ("Anzaldua") second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is granted.

### BACKGROUND

Plaintiff Anzaldua, a "white/Hispanic woman," was hired by the City of Chicago at the Chicago Transit Authority and functioned as an administrative assistant for approximately 15 years. During her employment as an administrative assistant, Anzaldua's responsibilities included organizing paperwork, reporting, and scheduling

documents for the work performed on the CTA property for the north side of Chicago. On August 10, 2001, James Jenkins ("Jenkins"), a black male, conducted a meeting of the managers and coordinators of systems maintenance for the north side of Chicago. The attendees at the meeting included Anzaldua and Eileen Wrightsell ("Wrightsell"), a black administrative assistant working for the CTA on the south-west side of the city. At the meeting, Jenkins announced that Anzaldua was reassigned to the Beverly office on the southwest side of the city, which Anzaldua claims is in a predominately black neighborhood and not near her home. Additionally, Jenkins relocated Wrightsell to the north side, where Anzaldua was positioned.

Anzaldua claims that, except for management personnel, a support staff employee within the system has never been reassigned. Because Jenkins never provided a reason or justification for the switch, Anzaldua confronted Jenkins after the meeting and asked why she was reassigned to the south-west side of the city. According to Anzaldua, Jenkins told her that when his wife returned to work, she was transferred, without reason, to an uncomfortable location, and "what goes around comes around." Jenkins also allegedly stated: "See how you like it working with my people" and "if you don't like it, quit." Plaintiff Anzaldua claims she was discriminated against based on her race and was constructively discharged on August 17, 2001.

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. *Triad Associates, Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In ruling on a motion to dismiss, the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 444-45 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle v. Morton High school*, 144 F.3d 448, 455 (7th Cir. 1998). However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *id.*, and the plaintiff cannot satisfy federal pleading requirements merely "by attaching bare

legal conclusions to narrated facts which fail to outline the bases of their claims." *Perkins*, 939 F.2d at 466-67.

## DISCUSSION

On September 12, 2002 we denied CTA's 12(b)(6) motion to dismiss, but CTA now claims that its statute of limitations argument in the prior motion was inadvertently brought under Rule 12(b)(6) and should have been brought pursuant to Rule 12(b)(4) and (5) seeking to dismiss for lack of jurisdiction. CTA brings the instant motion to dismiss pursuant to Rule 12(b)(6). We are not prohibited from entertaining the motion and we think it proper to do so.

### I. Hostile Work Environment and Constructive Discharge

CTA argues that the complaint does not state facts sufficient to constitute a hostile work environment. Under Title VII an employer is prohibited from maintaining a workplace that is permeated with "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986)). Factors considered in determining whether there is a hostile work environment are: 1) "frequency of discriminatory conduct," 2) "its severity," 3) whether conduct is "physically threatening or humiliating" or merely offensive,

4) whether conduct "unreasonably interferes with [the plaintiff's] work performance," and 5) the "social context in which events occurred." *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002). In this case Anzaldua alleges only one isolated incident where Jenkins allegedly made remarks concerning her working with Jenkins' "people" and she was told that she was going to be transferred. These allegations are not sufficiently severe or frequent to constitute discrimination that permeated Anzaldua's workplace and altered the conditions of her employment.

CTA claims that Anzaldua improperly attempts to bolster her case by introducing additional facts in her answer to the instant motion to dismiss and in documents attached to that answer. The new allegations claim that in early 2000 Jenkins began routinely harassing all the Hispanic employees that he supervised and that Jenkins told Anzaldua that he would like to break her legs or hit her on the head with a baseball bat. We will consider additional information in a responsive brief to a motion to dismiss to the extent that it is supplemental and consistent with the complaint and clarifies the information in the complaint. However, we will not consider additional information in the response that is inconsistent with the complaint, expands the plaintiff's case, or concerns new claims and new topics. *See Alioto v. Marshall Field's & Co.*, 77 F.3d 934, 936 (7th Cir. 1996) (stating that court cannot look beyond pleadings when ruling on a 12(b)(6) motion); *Hrubec v. National*

*Railroad Passenger Corp.*, 981 F.2d 962, 963-64 (7th Cir. 1992) (stating that a plaintiff "need not put all of the essential facts in the complaint" and can add them in his briefs); *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989) (stating that complaint cannot be amended in briefs in opposition to motion to dismiss); *Brown v. LaSalle Northwest Nat'l Bank*, 148 F.R.D. 583, 586 (N.D. Ill. 1993) (recognizing a disagreement among 7th Circuit cases as to whether only allegations in complaint can be considered for a 12(b)(6) motion).

In this instance Anzaldua has used the answer to significantly expand her allegations from one isolated incident where she was told that she was going to be transferred to a year and a half of discrimination against all Hispanic employees working with Anzaldua and threats of physical violence. This new information does not clarify the transfer incident in the complaint, but rather concerns new topics and expands Anzaldua's case. She may not circumvent the need to request leave to amend her complaint by including new allegations in her answer. We also note that Anzaldua has already amended her complaint twice and failed to include these new allegations. Therefore, we will not consider the additional allegations included in Anzaldua's answer.

Anzaldua also claims that she was constructively discharged when she was told to transfer to the south side or else quit. In order to establish a constructive discharge

an employee must show that "his working conditions were so intolerable that a reasonable person would have been compelled to resign." *Simpson v. Borg-Warner Automotive, Inc.*, 196 F.3d 873, 877 (7th Cir. 1999) (quoting *Rabinovitz v. Pena*, 89 F.32d 482, 489 (7th Cir. 1996)). For a constructive discharge the working conditions must be even worse than are necessary to constitute a hostile work environment because in a hostile work environment the "employee is expected to remain employed while seeking redress." *Tutman v. WBBM-TV, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) (quoting *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998)). Anzaldua alleges only one isolated incident where comments were made to her, and we have already found that the alleged discomfort to Anzaldua does not rise to the level of a hostile work environment. Anzaldua also claims that the transfer may add up to an hour and a half each way to her daily commute. Even if this were true, it may be an inconvenience to Anzaldua, but it is not sufficient to constitute a constructive discharge.

Finally, Anzaldua asks us to recognize her hardship in having to go and work in a predominantly black neighborhood. On page two of her answer memorandum to the instant motion, Anzaldua makes it clear that she believes Jenkins' reference to "my people" was intended to mean "black people." Also, on page two of her answer she lists the reasons that the transfer is a burden on her. She states that she would have a

longer commute and would have to work in a "predominately black and presumably hostile environment." On page eight of her answer she complains that she is a "Hispanic woman being moved to an environment surrounded by 'Jenkins people,' that would require her to travel an extra 2 ½ to 3 hours every day." We will not entertain the notion that a reasonable person would be compelled to resign based on the racial composition of the person's coworkers or the neighborhood in which the person works. Such an argument contains precisely the stereotypical notions and racist attitude that Anzaldua herself complains of.

## II. Material Adverse Employment Action

CTA also argues that Anzaldua does not state a Title VII claim because she alleges no adverse employment action. Anzaldua does not present any direct evidence of discrimination and therefore will need to proceed under the indirect method for proving discriminatory intent which requires that she first establish a prima facie case of race discrimination. *Traylor v. Brown*, 295 F.3d 783, 787-88 (7th Cir. 2002). To establish a prima facie case of race discrimination a plaintiff must show: "(1) that she was a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably." *Id.* at 788. An adverse employment action must be material and thus must be "more disruptive than a mere inconvenience or an

alteration of job responsibilities." *Id.* (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996)). Also, simply because an employment action makes an employee unhappy does not make the action an adverse employment action. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

Anzaldua claims that the transfer was a material adverse employment action. However, "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996); *see also Hill v. American General Finance, Inc.*, 218 F.3d 639, 645 (7th Cir. 2000) (stating that a lateral transfer is not an adverse employment action). Anzaldua was transferred from an administrative assistant position at the Maypole Street location to an administrative assistant position at the Beverly location. She does not claim that her pay or benefits were reduced or that the terms of employment were affected in any way. She only complains that the transfer increased her commute to work. However, a transfer that causes a longer commute to work is not in itself an adverse employment action. *See id.* (stating that increased distance to work is not by itself an adverse employment action); *Smart*, 89 F.3d at 441 (noting that in *Spring v. Sheboygan Area School District*, 865 F.2d 883 (7th Cir. 1989) the "only negative employment-related consequence of the [plaintiff's] transfer was found to be an increase in the distance [the

plaintiff] had to travel to work" and that did not constitute a material adverse employment action). Anzaldua's increased commute is merely an inconvenience and does not constitute a material adverse employment action. For the reasons stated above we will not entertain any notion that the racial composition of Anzaldua's co-workers or the neighborhood where Anzaldua was transferred to can be the basis for an adverse employment action.

## CONCLUSION

Based on the foregoing analysis we grant the motion to dismiss.


*Charles P. Kocoras*

Charles P. Kocoras
Chief Judge
United States District Court

Dated: November 14, 2002